IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SONYA MARIE MCALISTER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 15-cv-387-CVE-TLW |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Sonya Marie McAlister seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **AFFIRMED**.

## ISSUES

On appeal, plaintiff raises five points of error. First, plaintiff argues that the administrative law judge ("ALJ") failed to account for moderate limitations in her concentration, persistence, or pace in the residual functional capacity ("RFC") findings. (Dkt. 12). Second, plaintiff argues that the ALJ improperly weighed the medical opinion evidence. Id. Third, plaintiff contends that the ALJ failed to make proper credibility findings. Id. Fourth, plaintiff argues that the ALJ had a duty to develop the record and order the testing recommended by Dr. Anne Winkler because the ALJ gave great weight to Dr. Winkler's opinion. Id. Fifth, plaintiff contends that the ALJ erred at step five because one of the jobs that the ALJ found plaintiff could perform is inconsistent with the RFC limitation to "simple, repetitive work." Id.

## STANDARD OF REVIEW

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his or her alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a

plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 35-year old female, filed for Title II and Title XVI benefits in November 2011, alleging a disability onset date of January 31, 2010. (R. 196-99, 200-09). At the ALJ hearing in July 2013, plaintiff amended her disability onset date to July 7, 2012, because she received unemployment benefits through the second quarter of 2012. (R. 59-60). Plaintiff claimed that she was unable to work due to depression, "bad nerves," and an inability to sit or stand for long periods of time. (R. 288). Plaintiff's claims for benefits were denied initially on April 17, 2012, and on reconsideration on September 18, 2012. (R. 89-103, 107-112). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held a hearing on June 13, 2013. (R. 56-

88). The ALJ held a supplemental hearing on December 2, 2013. (R. 32-55). The ALJ issued a decision on January 17, 2014, denying benefits. (R. 9-31). The Appeals Council denied review, and plaintiff appealed. (R. 1-4; dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff's date last insured, for purposes of her Title II claim, was December 31, 2015. (R. 14). The ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged amended disability onset date of July 7, 2012. Id. Plaintiff has severe impairments of degenerative disc disease, a history of atrial fibrillation and hypertension, obesity, depression, and post-traumatic stress disorder. Id. Plaintiff's borderline intellectual functioning, history of anemia, and acid reflux are non-severe impairments. (R. 14-15). The ALJ found that the record did not support a diagnosis of fibromyalgia and determined it to be a medically non-determinable impairment. (R. 15).

The ALJ determined that plaintiff's impairments did not meet or medically equal a listing. (R. 16). In considering plaintiff's mental impairments using the paragraph B criteria, the ALJ found that plaintiff has moderate limitations in the areas of activities of daily living; social functioning; and concentration, persistence, or pace. Id.

The ALJ then considered plaintiff's testimony and the medical evidence. Plaintiff testified that she has a high school education with no special education classes. (R. 19). She complained of limitations in the use of her hands and chronic pain. (R. 19). Plaintiff testified that she could stand, walk, and sit no more than ten minutes at a time. Id. She could only lift ten pounds. Id. She also testified that she had been diagnosed with major depression with psychotic features and that she suffers from anxiety with monthly panic attacks. Id.

4

The ALJ considered the testimony of Dr. Winkler, who testified as an expert at the supplemental hearing. (R. 18-19). Dr. Winkler testified that, based on her review of the record, plaintiff could perform medium work with some postural limitations. Id. However, after plaintiff's attorney presented evidence of a recent lumbar MRI and reviewed the results with Dr. Winkler, she amended her opinion to state that plaintiff could perform sedentary and possibly some light work (based on a finding that plaintiff could stand and walk four to six hours in an eight-hour workday). (R. 19). Dr. Winkler found that there was insufficient evidence in the record to diagnose plaintiff with fibromyalgia or inflammatory arthritis. (R. 14-15). The ALJ gave great weight to Dr. Winkler's opinion, finding it consistent with the medical evidence.

In March 2012, plaintiff underwent a consultative physical examination. (R. 20). The examining physician found that plaintiff's arm, leg, and grip strength was a 4/5. Id. Plaintiff had normal range of motion of the spine except for decreased flexion of the back; however, her spine was not tender to palpation. Id. Plaintiff also had normal range of motion in her neck, although it was tender to palpation. Id. Plaintiff's gait was "slow" and "antalgic." Id. Plaintiff also had difficulty walking on her heels and toes. Id. The ALJ gave some weight to the consultative examining physician's opinion but noted that the findings of arm, leg, and grip strength conflicted with other examininations from plaintiff's treating physician that showed normal strength. Id.

Plaintiff sought treatment from Dr. Rita Westenhaver in July 2012. (R. 21). In March 2013, Dr. Westenhaver diagnosed plaintiff with fibromyalgia and inflammatory arthritis, but the record contains no evidence of diagnostic testing. Id. The ALJ gave no weight to Dr. Westenhaver's opinion, citing the lack of objective medical testing and Dr. Winkler's own testimony regarding the lack of evidence. Id.

X-rays taken in July 2013 showed no abnormalities in plaintiff's knees but did show degenerative disc disease at L5-S1. (R. 21). In November 2013, plaintiff underwent an MRI of the lumbar spine, which showed spondylitic changes to L5-S1 and mild to moderate left neural foraminal stenosis. Id.

In considering plaintiff's allegations of disabling mental health conditions, the ALJ reviewed the report of the consultative examining psychologist, Dr. Denise LaGrand, who examined plaintiff in February 2012. (R. 22). During that examination, plaintiff reported experiencing anxiety and depression for four years. Id. She also reported that she graduated from high school with honors and had earned one hundred hours of college credit, maintaining a 3.0 GPA. Id. Dr. LaGrand found that plaintiff's attention and concentration were below average. Id. She also estimated that plaintiff's IQ was borderline. Id. In assessing plaintiff's diagnoses, Dr. LaGrand included a note to "rule out borderline intellectual functioning." Id. The ALJ gave some, but not great, weight to Dr. LaGrand's opinion, on the grounds that her conclusions relied heavily on plaintiff's subjective complaints. Id.

The ALJ noted that plaintiff did not seek mental health treatment until August 2012. (R. 23). Although plaintiff reported additional symptoms that she did not address in the consultative psychological examination, the mental health provider only scheduled appointments for plaintiff every other month. Id.

Based on plaintiff's testimony and the objective medical evidence, the ALJ found that plaintiff was not entirely credible. (R. 19). The ALJ noted that plaintiff's complaints were inconsistent with the objective medical evidence. Id. The ALJ cited specifically to the results of the consultative physical examination, a June 2012 examination with plaintiff's treating physician, and plaintiff's October 2013 MRI. Id. The ALJ also noted that plaintiff received limited mental

health treatment and that the timing of her treatment – after she filed her application for disabiility benefits – raised suspicion as to the severity of her mental health issues. Id.

The ALJ concluded that plaintiff retained an RFC for sedentary work with mental limitation for simple repetitive work, superficial contact with co-workers and supervisors, and no contact with the general public. (R. 17). The ALJ specifically noted that plaintiff's "moderate degenerative disc disease, history of atrial fibrillation and hypertension, obesity, borderline intellectual functioning, depression, and posttraumatic stress disorder (PTSD) "would cause some limitations." (R. 23-24). While plaintiff could not perform her past relevant work, the ALJ found that plaintiff could perform other work, including jobs as an addresser (DOT # 209.587-010), tube operator (DOT # 239.687-014), and document processor (DOT # 249.587-018). (R. 25). Accordingly, the ALJ determined that plaintiff was not disabled. (R. 25-26).

## ANALYSIS

**Moderate Limitation in Concentration, Persistence, or Pace**

Plaintiff cites a string of cases for the proposition that the limitation to "simple, repetitive tasks" is insufficient to address a moderate limitation in concentration, persistence, or pace. (Dkt. 12). The Tenth Circuit addressed this question in Jaramillo v. Colvin, 576 F. App'x 870 (10th Cir. 2014) (unpublished).[1] In Jaramillo, the Tenth Circuit rejected a limitation to "simple, routine, repetitive, and unskilled tasks" as a proper explanation, using work-related functions, to account for limitations caused by the claimant's mental impairments. 576 F. App'x at 874-75. The court relied on SSR 85-15, which defines "the basic mental demands" of unskilled work to include the ability to handle "simple instructions." SSR 85-15. However, the court explained that "a limitation

---

[1] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

to unskilled work or, as the ALJ phrased it here, 'unskilled tasks,' *could* be used as shorthand for the specific mental abilities described in SSR 85-15," as opposed to a limitation on a claimant's work-related mental function that exists as a result of a mental impairment. Jaramillo, 576 F. App'x at 875 (emphasis added).

Similarly, in Wayland v. Chater, 1996 WL 50459 (10th Cir. Feb. 7, 1996) (unpublished), the Tenth Circuit found that limiting the claimant to unskilled work did not address moderate limitations in social functioning where the claimant "often" had issues with concentration, persistence, or pace due to depression and personality disorder. 1996 WL 50459 at *1. Nonetheless, the Tenth Circuit stated that "there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence addressing that limitation might be dispensed with . . . ." Id. at *2.

More recently, the Tenth Circuit addressed this question in the published case cited by the Commissioner, Vigil v. Colvin, 805 F.3d 1199, 1204 (10th Cir. 2015). In Vigil, the Tenth Circuit concluded that a limitation to unskilled work, without particularized vocational evidence, is proper if supported by the evidence. See 805 F.3d at 1204. Vigil is consistent with the other cases addressed above and, as a published case, is controlling here. Thus, the question is whether the ALJ's limitation on plaintiff's work to simple, repetitive tasks is supported by the evidence.

In this case, plaintiff does not argue that the record supports a more restrictive RFC finding than the one determined by the ALJ. (Dkt. 12). Instead, plaintiff argues that, as a general principle of law, a limitation to "simple, repetitive tasks" is insufficient. However, as the Tenth Circuit stated in Vigil and in many prior unpublished decisions, whether or not a limitation to "simple, repetitive tasks" is sufficient to account for a mental impairment depends on the record in each case.

To support her argument, plaintiff relies on Dr. LaGrand's finding that plaintiff's attention and concentration were below average and the agency physician's mental RFC form finding that plaintiff has a moderate limitation in the area of concentration, persistence, and pace – evidence that the ALJ adopted. This evidence supports the ALJ's conclusion that plaintiff has a moderate limitation in concentration, persistence, and pace, but, as the case law clearly states, it does not require a finding that plaintiff is unable to perform simple, repetitive work. Plaintiff cites to no additional evidence to support her argument, and a review of the record does not show any evidence of a more severe problem than those limitations imposed by the ALJ. Accordingly, the ALJ did not commit error on this point.

**Medical Opinion Evidence**

Plaintiff argues that the ALJ improperly weighed the medical evidence and/or failed to include all of the limitations cited in the physicians' opinions. (Dkt. 12). Specifically, plaintiff argues that the ALJ failed to include the postural limitations, such as stooping and climbing, that Dr. Winkler and the agency physicians recommended, even though the ALJ gave those opinions great weight. Id. Plaintiff also argues that the ALJ did not give good reasons for giving Dr. LaGrand's opinion only some weight. Id. Plaintiff contends that the ALJ ignored the objective testing, which shows borderline intellectual functioning and low math scores that would eliminate the other jobs that the ALJ found plaintiff could perform. Id. Plaintiff further argues that the ALJ erred in giving only some weight to the consultative examining physician's opinion. Id.

Dr. Winkler opined that plaintiff could not climb ladders, ropes, or scaffolds and should avoid unprotected heights but could frequently climb stairs, bend, stoop, kneel, crouch, and crawl. (R. 18, 41). The ALJ limited plaintiff to sedentary work. (R. 15-16). According to SSR 96-9p, "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or

9

scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." Sedentary work also does not require more than occasional stooping. Id. See also SSR 83-10; SSR 85-15.

As such, there is no contradiction in the ALJ's decision to give Dr. Winkler's opinion great weight and his failure to specifically list any postural limitations derived from that opinion in the RFC. The Tenth Circuit has held that such an omission from the RFC is harmless when there is no conflict between the opinion and the RFC findings. See Mays v. Colvin, 739 F.3d 569, 578-79 (10th Cir. 2014) (finding harmless error in the context of the failure to weigh an opinion); Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004) (same). Accordingly, any error in failing to include the postural limitations from Dr. Winkler's opinion in the RFC was harmless because the postural limitations are included in the definition of sedentary work.

Plaintiff argues that the ALJ did not give good reasons for only giving some weight to Dr. LaGrand's opinion. (Dkt. 12). The ALJ gave less than controlling weight to Dr. LaGrand's opinion because he found the opinion relied heavily on plaintiff's subjective complaints. (R. 22). Plaintiff also contends that the ALJ erred in giving only some weight to Dr. LaGrand's objective test results because those tests demonstrate that plaintiff is unable to perform the math skills necessary for the other work that the ALJ listed at step five. (Dkt. 12). Plaintiff identifies those skills as "Add and subtract two-digit numbers. Multiply and divide 10's and 1 0 0 ' s by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." (Dkt. 12). Plaintiff fails to cite the source of these skills; however, the undersigned has identified them as part of

10

the Level 1 reasoning skills listed under the General Education Development section in Appendix C of the Dictionary of Occupational Titles ("DOT").

Plaintiff's argument is without merit. Plaintiff's challenge to the ALJ's assessment of Dr. LaGrand's opinion is limited to the ALJ's evaluation of plaintiff's limited IQ. The ALJ did not ignore Dr. LaGrand's notation to rule out borderline intellectual functioning. To the contrary, the ALJ identified it as a non-severe impairment (R. 14) and considered it in evaluating plaintiff's RFC. (R. 22, 24). The ALJ limited plaintiff to simple, repetitive work, which is consistent with Dr. LaGrand's assessment. (R. 17). The ALJ's additional discussion of Dr. LaGrand's opinion relates to the diagnoses of depression and PTSD and the GAF score of 45. (R. 22-23). The ALJ's reasoning is clear to the undersigned. The ALJ discounted the GAF score and Dr. LaGrand's reliance on plaintiff's self-report that her depression started four years before her application for benefits. The ALJ accepted those portions of Dr. LaGrand's opinion related to plaintiff's cognitive abilities, attention, and concentration.

With respect to plaintiff's limited mathematical ability, plaintiff offers no correlation between the test results (showing that plaintiff could perform math skills at a 4.5 grade level) and the math skills, cited above, that plaintiff alleges would be required to perform the other work listed in the ALJ's decision. More importantly, a review of the job descriptions for addresser, tube operator, and document processor do not require the performance of any math-related duties or skills.[2] Even if the ALJ had given great weight to Dr. LaGrand's opinion, plaintiff's argument regarding her math skills would not have impacted the ALJ's analysis of that opinion. Accordingly, the ALJ did not err in his decision to give only some weight to Dr. LaGrand's opinion.

---

[2] See http://www.occupationalinfo.org/contents.html (last visited on January 9, 2017) (using the search engine to identify each job by DOT number).

Plaintiff's argument with respect to the consultative examining physician's opinion fails for similar reasons. Plaintiff takes issue with the ALJ's decision to give only some weight to the physician's findings that plaintiff's arm, leg, and grip strength were 4/5. (Dkt. 12; R. 20-21). The ALJ noted that at least one subsequent examination showed that plaintiff's arm, leg, and grip strength were 5/5. (R. 21). Plaintiff argues that the examination took place just ten days after she applied for benefits and that the examination in question was a well woman gynecological examination. (Dkt. 12). Even if the undersigned assumes that the well woman examination did not adequately evaluate plaintiff's strength (which plaintiff has not established), and even if the ALJ should have accepted the consultative examining physician's findings with respect to plaintiff's strength, plaintiff fails to argue, much less demonstrate that arm, leg, and grip strength of 4/5 would prevent plaintiff from performing sedentary work.

**Credibility**

Plaintiff argues that the ALJ did not perform a proper credibility analysis. (Dkt. 12). Plaintiff argues that the ALJ relies on evidence that plaintiff participated in bull riding, despite no evidence in the record to support such a finding. Id. Plaintiff also argues that the ALJ relied on generic reasons – plaintiff's activities of daily living and a brief statement that plaintiff's complaints are inconsistent with the objective medical evidence – rather than providing specific reasons. Id.

This Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id.

(citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

The undersigned is satisfied that the reference to bull riding is nothing more than a scrivener's error that did not impact the ALJ's credibility analysis. The undersigned does agree that the ALJ's reliance on plaintiff's activities of daily living is boilerplate. Although boilerplate language is disfavored, its use does not constitute reversible error when the ALJ includes analysis supporting it. See Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004) (holding that credibility analysis cannot rely solely on boilerplate language, and must address, "in a meaningful, reviewable way[,] the specific evidence the ALJ considered ....").

Although the ALJ did not further discuss plaintiff's activities of daily living, he did discuss, in great detail, the objective medical evidence that led him to conclude that plaintiff's testimony was entitled to little weight. The ALJ cited the consultative examining physician's report, an examining physician's treatment notes, x-rays, and MRI reports documenting plaintiff's physical symptoms. (R. 19). The ALJ also discussed plaintiff's failure to seek mental health treatment until after she applied for benefits and the routine nature of that treatment as evidence that decreased her credibility. (R. 19-20). After citing these examples briefly, the ALJ continued with a more in-depth discussion of the objective medical evidence as part of his assessment of plaintiff's RFC. (R. 20-23). The ALJ's discussion of plaintiff's credibility was sufficient, even with the scrivener's

error and use of boilerplate language, to satisfy his duty to apply the regulatory factors and cite to specific evidence in the record.

**Duty to Develop the Record**

Plaintiff argues that the ALJ's decision to give great weight to Dr. Winkler's opinion required the ALJ to order additional testing to rule out fibromyalgia and inflammatory arthritis. (Dkt. 12). Plaintiff contends that Dr. Winkler testified at the hearing that additional testing was needed to confirm the diagnosis of fibromyalgia. Id.

Dr. Winkler testified that plaintiff's medical records contained diagnoses for fibromyalgia and inflammatory arthritis but no evidence of the physical examinations and tests necessary to confirm those diagnoses. (R. 40-41). After Dr. Winkler testified, she had the following exchange with plaintiff's attorney:

> Q       So more testing would be important in this case, doctor?
>
> A       Yeah, yeah. In, in general to make the diagnosis of, say, fibromyalgia, you do need to do a musculoskeletal exam and, and, I didn't see that really done in these records. To make a diagnosis of inflammatory arthritis, again, you need a musculoskeletal exam.

(R. 42). Dr. Winkler's testimony does not include any statements about whether the underlying medical records included any evidence that suggested plaintiff might be suffering from fibromyalgia or inflammatory arthritis.

The ALJ's decision, however, does address those questions. Dr. Westenhaver diagnosed plaintiff with fibromyalgia in March 2013, but, as the ALJ noted, Dr. Westenhaver did not perform any testing before assigning that diagnosis to plaintiff. (R. 21). The ALJ references Dr. Westenhaver's treatment notes, which cites plaintiff's self-report that she has a history of fibromyalgia and inflammatory arthritis. (R. 678). Based solely on plaintiff's self-report, Dr.

Westenhaver sent a letter stating that plaintiff does, indeed have diagnoses of fibromyalgia and inflammatory arthritis. (R. 615).

The ALJ has "broad latitude in ordering consultative examinations." Hawkins v. Chater, 113 F.2d 1162, 1166 (10th Cir. 1997). Hawkins, citing the applicable regulations and other case law, holds that, despite the ALJ's discretion, a consultative examination must be ordered in three instances:

"where there is a direct conflict in the medical evidence requiring resolution;"

"where the medical evidence in the record is inconclusive;" or

"where additional tests are required to explain a diagnosis already contained in the record."

Id. (citations omitted). Hawkins notes that "[t]he difficult cases are those where there is some evidence in the record or some allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling." Id. at 1167. In that situation, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." Id.

In this case, there is no objective evidence to suggest that plaintiff has either fibromyalgia or inflammatory arthritis. Dr. Westenhaver's entire basis for finding that plaintiff has these impairments is plaintiff's self-report that she has a history of both conditions. (R. 615, 678). Accordingly, because Dr. Winkler did not recommend that additional testing was necessary in this case and because the record does not support additional testing, the ALJ was not required to order testing for fibromyalgia and inflammatory arthritis.

**Step Five Error**

Plaintiff argues that the ALJ erred in finding that plaintiff can perform the job of document processor because it requires an SVP of 3, which exceeds the RFC limitation of simple, repetitive work. (Dkt. 12).

In considering whether plaintiff could perform "other work," the ALJ was required to assess whether plaintiff could:

> Engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives *or* in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (emphasis added).

The Tenth Circuit permits a reviewing court to find harmless error if the ALJ improperly identifies a job at step five but the remaining jobs exist in numbers that satisfy the "significant number of jobs" requirement. See Evans v. Colvin, 630 F. App'x 731, 735-36 (10th Cir. 2016) (unpublished).

Even if the undersigned assumes that the job of document processor does exceed plaintiff's RFC, plaintiff does not challenge the remaining two jobs – addresser and tube operator – listed in the ALJ's decision. The vocational expert testified that there are 40,700 addresser jobs in the national economy and 20,300 tube operator jobs in the national economy. (R. 84). While there is no bright line test to determine the number that amounts to a significant number of jobs, see Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992), 61,000 jobs clearly qualify as a significant number. See Botello v. Astrue, 376 F. App'x 847, 850-51 (10th Cir. 2010) (unpublished) (holding

that reversal was not required when 67,250 jobs existed nationally and plaintiff had challenged only the number of regional jobs available).

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by January 31, 2017.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 17th day of January, 2017.

_____
T. Lane Wilson
United States Magistrate Judge

17