UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

SONYA MARIE MCALISTER,              )
                                    )
         Plaintiff,                 )
                                    )
v.                                  )   Case No. 15-CV-0387-CVE-TLW
                                    )
NANCY A. BERRYHILL,[1]              )
Acting Commissioner of              )
Social Security,                    )
                                    )
         Defendant.                 )

## OPINION AND ORDER

Now before the Court is the Report and Recommendation (Dkt. # 17) of Magistrate Judge T. Lane Wilson recommending that defendant's decision to deny plaintiff's application for disability benefits be affirmed. Plaintiff has filed an objection (Dkt. # 18) to the report and recommendation, and she asks the Court to reverse the defendant's decision and remand the case for further administrative proceedings. The time to file a response to plaintiff's objection has expired, and defendant has not filed a response.

I.

On November 17, 2011, plaintiff filed an application for disability benefits alleging that she was disabled as of January 31, 2010. Dkt. # 11-5, at 2-5. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge (ALJ). Dkt. # 11-3, at 2-7; Dkt. # 11-4, at 14-23.

---

[1]  Carolyn W. Colvin is no longer the Acting Commissioner of the Social Security Administration, and Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Under Federal Rule of Civil Procedure 25(d), Berryhill is automatically substituted as the defendant and the parties do not need to file a motion to substitute the party defendant.

A hearing was held on June 14, 2013, and plaintiff was represented by counsel at the hearing. Dkt. # 11-2, at 57. Plaintiff orally moved to amend the date of onset of disability from January 31, 2010 to July 7, 2012, and her request was granted. Id. at 61-62. Plaintiff testified that her primary physical problems were carpal tunnel syndrome, fibromyalgia, degenerative disc disease, and inflammatory arthritis. Id. at 63. She frequently changes positions due to pain in her legs, but she spends at least half of her day sitting or lying down. Id. at 66. Plaintiff's hands frequently fall asleep and she has swelling in her hands, and she sometimes has problems with grip strength. Id. at 70-71. Plaintiff takes pain pills and muscle relaxers, and she is often tired and has a hard time concentrating. Id. at 73. She testified that she was diagnosed with major depressive disorder, and she has problems with concentration and memory. Id. at 77. The ALJ called a vocational expert (VE), Julie Harvey, to testify about plaintiff's work history, and Harvey testified that a hypothetical claimant limited to sedentary work with additional limitations could not perform plaintiff's past relevant work. Id. at 84. However, the hypothetical claimant could work as an addresser, tube operator, or document processor. Id. at 85.

The ALJ held a supplemental hearing and heard testimony from an impartial medical expert, Anne Winkler, M.D., and a different VE, Lisa Cox. Dr. Winkler testified that plaintiff suffered from hypertension, mild degenerative disc disease, and some psychological issues, but that there was insufficient objective medical evidence to confirm a diagnosis of fibromyalgia, inflammatory arthritis, or carpal tunnel syndrome. Id. at 41. As to physical restrictions, Dr. Winkler found that plaintiff could lift or carry up to 30 pounds occasionally and 20 pound frequently, and plaintiff could stand or walk up to seven hours out of an eight hour workday. Id. at 42. Plaintiff's counsel examined Dr. Winkler about the need for additional testing, and Dr. Winkler explained that she

2

could not confirm a diagnosis of fibromyalgia, inflammatory arthritis, or carpal tunnel syndrome without physical examination findings. Id. at 43.

On January 17, 2014, the ALJ entered a written decision denying plaintiff's claim for disability benefits. Plaintiff alleged a date of onset of disability of July 7, 2012. Dkt. # 11-2, at 15. The ALJ found that plaintiff had severe impairments of atrial fibrillation and hypertension, obesity, depression, and post-traumatic stress disorder (PTSD), but plaintiff's complaints of borderline intellectual functioning, iron anemia, and acid reflux were non-severe and the objective medical evidence was insufficient to confirm a diagnosis of fibromyalgia or inflammatory arthritis. Id. at 15-16. Plaintiff did not have an impairment or combination of impairments that rose to the level of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 16. The ALJ did find that plaintiff had moderate difficulties with concentration, persistence, and pace, as well as moderate difficulties with social functioning. Id. at 17. The ALJ found that plaintiff had the residual functional capacity (RFC) to do the following work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the undersigned finds the claimant can occasionally lift and/or carry 10 pounds and frequently up to 10 pounds. She can stand and/or walk at least 2 hours out of an 8-hour workday and sit for at least 6 hours out of an 8-hour workday. She is limited to simple, repetitive task [sic] with the ability to relate to supervisors and coworkers only superficially and no work with the general public.

Id. at 18. The ALJ considered plaintiff's testimony but gave it little weight, because plaintiff's subjective complaints were not supported by objective medical evidence. Id. at 20. The ALJ summarized Dr. Winkler's opinions and the findings of a consultative examiner, David Wiegman, M.D. Id. at 19-21. Dr. Wiegman's opinions were given some but not great weight, because the ALJ found that Dr. Wiegman's opinions were not fully supported by his objective findings. Id. at 22.

Plaintiff's treating physician, Rita Westenhaver, D.O., diagnosed fibromyalgia and inflammatory arthritis, but Dr. Winkler found no testing to support either diagnosis. Id. The ALJ also considered the mental RFC assessment provided by Denise LaGrand, Ph. D, but the ALJ gave reduced weight to Dr. LaGrand's findings due to her heavy reliance on plaintiff's subjective complaints. Id. at 23. Based on plaintiff's RFC, the ALJ found that plaintiff could not return to her past relevant work, but she could perform the jobs of addresser, tube operator, and document processor. Id. at 25-26. Based on the VE's testimony, the ALJ found that there were jobs in significant numbers in the national economy that plaintiff could perform with her RFC, and he found plaintiff not disabled at step five. Id. at 26.

Plaintiff sought review of the denial of her claim for disability benefits by the Appeals Council, but the Appeals Council found no basis to review the ALJ's decision. Id. at 2-3. On July 13, 2015, plaintiff filed this case seeking judicial review of the ALJ's decision, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge recommends that the Court affirm defendant's decision to deny plaintiff's claim for disability benefits. Dkt. # 17.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §

636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

## III.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work. *See Id.* Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis, finding that sufficient jobs existed in the national economy to allow plaintiff to work. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**A.**

Plaintiff argues that the ALJ failed to account for moderate limitations in concentration, persistence, and pace in formulating her RFC. Dkt. # 18, at 1-2. The magistrate judge recommends a finding that the RFC adequately accounts for plaintiff's mental limitations by imposing a restriction that plaintiff can perform only simple and repetitive work, because the evidence in the administrative record does not support any greater restriction and the ALJ's decision is consistent with Tenth Circuit precedent. Dkt. # 17, at 8-9.

In Vigil v. Colvin, 805 F.3d 1199 (10th Cir. 2015), the Tenth Circuit found that an ALJ's finding of moderate difficulties with concentration, persistence, and pace do not automatically translate into functional limitations for the purpose of formulating a claimant's RFC. Id. at 1203. It was appropriate in Vigil for the ALJ to account for such difficulties by limiting the claimant to unskilled work, but this issue must be considered on a case-by-case basis and there could be cases

in which a limitation to unskilled work does not adequately take into account all of the claimant's mental limitations. Id. at 1204. In several unpublished decisions, the Tenth Circuit has consistently followed Vigil and has found that a limitation to simple or repetitive work in the RFC adequately encompasses a finding at step three that the claimant has moderate limitations as to concentration, persistence, and pace. Orso v. Colvin, 658 F. App'x 418, 420 (10th Cir. Sep. 29, 2016); Richards v. Colvin, 640 F. App'x 786, 790 (10th Cir. 2016).[2]

The magistrate judge did not cite Vigil for the blanket proposition that a limitation to unskilled or simple work will always account for moderate limitations with concentration, persistence, and pace, and he correctly stated that this issue must be considered on a case-by-case basis. Dkt. # 17, at 8. He examined the administrative record and recommended that the RFC imposes restrictions sufficient to account for plaintiff's mental limitations. Id. at 9. Plaintiff argues that there is evidence in the administrative record supporting more substantial restrictions as to her ability to concentrate. The Court has reviewed the evidence cited by plaintiff, and the key piece of evidence is a mental [RFC] assessment performed by Barbara Lewis, Ph. D. Dr. Lewis' examination considered 20 separate categories related to plaintiff's ability to focus and concentrate, and she found that plaintiff had no significant limitation as to 16 of those categories. Dkt. # 11-7, at 159-62. Dr. Lewis noted moderate limitations as to plaintiff's ability to understand detailed instructions, maintain focus for an extended period of time, and interact with other people. Id. There is a second mental RFC assessment in the administrative record identifying limitations as to plaintiff's ability to follow detailed instructions and interact with the public. Id. at 141-43. The RFC adequately

---

[2] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

accounts for these restrictions by limiting plaintiff to simple and repetitive work with no contact with the general public. Dkt. # 11-2, at 18. The Court finds that the RFC adequately accounts for plaintiff's mental limitations.

**B.**

Plaintiff argues that ALJ did not discuss all of the medical opinion evidence and the RFC does not include all of the limitations recommended by examining physicians. Dkt. # 18, at 3. She claims that Dr. Winkler recommended that plaintiff was precluded from climbing ladders, ropes, and scaffolds, but these restrictions were not expressly included in the RFC. She also claims that the ALJ erred by failing to incorporate all of the restrictions recommended by Dr. LaGrand and Dr. Weigman.

Plaintiff claims that Dr. Winkler recommended that plaintiff be precluded from climbing ropes, ladders, and scaffolds but that plaintiff could frequently climb stairs, balance, stoop, kneel, spin, crouch and crawl, but the ALJ failed to include these restrictions in the RFC. Id. at 2. The magistrate judge recommends that any omission was harmless, because the ALJ found that plaintiff could perform only sedentary work and the listed activities are not ordinarily required when performing sedentary work. Dkt. # 17, at 10. Sedentary work is defined as follows:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9P, 1996 WL 374185 (July 2, 1996).  It is apparent from the definition of sedentary work that any restrictions as to climbing ropes, ladders, or scaffolds is not necessary in this case, because such activities are necessarily excluded by limiting plaintiff to sedentary work.  Even though Dr. Winkler found that plaintiff could frequently climb stairs and change positions, the ALJ crafted an RFC that was more restrictive by limiting plaintiff to only sedentary work, and any omission of Dr. Winkler's findings in this regard was favorable to plaintiff.  The Court does not find that the ALJ erred by failing to include all of Dr. Winkler's recommendations, but any such error was favorable to plaintiff and was therefore harmless.

Dr. LaGrand examined plaintiff at defendant's request as part of the review of plaintiff's claim for disability benefits, and reported that plaintiff claimed to suffer from depression and anxiety.  Dkt. # 11-7, at 110.  Dr. LaGrand noted plaintiff's subjective complaints that she was unable to work due to depression, but plaintiff refused to seek mental health treatment due to fear and paranoia.  Id. at 112.  The assessment states that plaintiff has major depressive order and PTSD, borderline intellectual functioning, and a Global Assessment Functioning (GAF) score of 45.  Id. at 114.  Plaintiff has limited math skills and she can perform math at a grade level of 4.5.  Id. at 115.  The ALJ summarized Dr. LaGrand's report in detail and noted that plaintiff had borderline intellectual functioning.  Dkt. # 11-2, at 23.  However, he gave Dr. LaGrand's findings "some" but not "great" weight due to Dr. LaGrand's heavy reliance on plaintiff's subjective complaints.  Id. In particular, the ALJ gave little weight to plaintiff's GAF score due to the subjective nature of GAF testing.  Id. at 24.  The ALJ did not specifically include any restriction in the RFC concerning plaintiff's ability to perform simple mathematics, but he did limit plaintiff to simple and repetitive

work. Id. at 18. The Court finds that the ALJ considered Dr. LaGrand's findings and adequately explained his reasons for the weight given to Dr. LaGrand's opinions.

Plaintiff argues that the ALJ erred by giving "some" but not "great" weight to Dr. Weigman's opinions that plaintiff had decreased arm strength, limited mobility, and back and neck pain. Dkt. # 18, at 4-5. The magistrate judge recommended a finding that the ALJ adequately considered the medical opinion evidence as a whole and appropriately considered other objective medical evidence that contradicted Dr. Weigman's findings. Dkt. # 17, at 12. The Court has reviewed Dr. Weigman's opinions (Dkt. # 11-7, at 117-18), and finds that plaintiff significantly overstates the significance of Dr. Weigman's examination. Dr. Weigman reported that plaintiff had "mild" difficulties with walking and "slightly decreased" grip strength, and he did not recommend any functional limitations that were not included in plaintiff's RFC. He also recorded plaintiff's subjective belief that she had degenerative disc disease, but he noted a lack of objective evidence to support such a diagnosis. The ALJ reviewed Dr. Weigman's findings in his written decision and explained his basis for rejecting some of Dr. Weigman's opinions, and the Court finds no basis to reverse the ALJ's decision based on the ALJ's treatment of the medical opinion evidence.

## C.

Plaintiff argues that the case should be remanded for the ALJ to consider whether there are sufficient jobs in the regional and national economies that plaintiff can perform with her RFC. She claims that she cannot perform the job of document processor with her RFC and, without this job, it is unclear if there are enough jobs available to plaintiff to support finding of "not disabled" at step five. Dkt. # 18, at 8-9. The magistrate judge assumed that plaintiff could not perform the job of document processor, but he recommended a finding that any possible error was harmless because

the remaining jobs of addresser and tube operator are available in significant numbers. Dkt. # 17, at 16.

In his written decision, the ALJ relied on the testimony of the VE and found that plaintiff could work as an addresser, tube operator, and document processor. This resulted in a total of 2,650 jobs available regionally and 251,200 jobs available nationally but, of this total, there were 2,300 jobs available regionally and 190,200 jobs available nationally as a document processor. The ALJ found that each of these jobs could be performed at the sedentary level and that each job had an specific vocational level (SVP) of 2. However, the job of document processor has a reasoning level of 3 and plaintiff argues that she cannot perform work at this level with her mental limitations. Defendant assumes that ALJ should not have relied on the job of document processor in considering what jobs were available to plaintiff, but argues that there were enough jobs available as an addresser and tube operator that any error by the ALJ was harmless. Dkt. # 15, at 10. The magistrate judge made the same assumption and recommended that any error in considering the job of document processor was harmless. Dkt. # 17, at 16.

The Tenth Circuit has emphasized that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation" and, as such, "the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" Allen v. Barnhart, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992)). However, the court in Allen also stated that "it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance . . . . Such an approach might have been open to us here had the number of available jobs identified by the VE not been one

Case 4:15-cv-00387-CVE-tlw   Document 19 Filed in USDC ND/OK on 03/02/17   Page 12 of 13

hundred but considerably greater." Id. at 1145. This case does not fit neatly within the Tenth Circuit's prior decisions on this issue. For example, in Rogers v. Astrue, 312 F. App'x 138, 141-42 (10th Cir. Feb. 17, 2009), where only one of the four originally proposed occupations had no conflict, the Tenth Circuit panel found that 11,000 positions in the national economy met the requirement for a "significant number" of jobs. Id. at 141-42.. In Norris v. Barnhart, 197 F. App'x 771, 777 (10th Cir. Sep. 26, 2006), however, the Tenth Circuit found that the two occupations without a conflict, which together totaled approximately 1,600 jobs in the regional economy and 210,000 jobs in the national economy, were not clearly present in "significant number[s]." Id. at 777. In Stokes v. Astrue, 274 F. App'x 675 (10th Cir. Apr. 18, 2008), the Tenth Circuit decided that the two jobs for which there was no conflict, together totaling 11,000 jobs regionally and 152,000 jobs nationally, existed in significant numbers, satisfying the step five analysis. Id. at 684.

In considering plaintiff's objection, the Court will make the same assumption as defendant and the magistrate judge that plaintiff could not work as a document processor with her RFC. The ALJ found that there were over 250,000 jobs available nationally and 2,650 regionally that plaintiff could perform. Dkt. # 11-2, at 26. However, this number is substantially reduced when the job of document processor is removed, because this job accounted for 190,200 of the jobs available nationally and 2,300 of the regionally available jobs. There are more national positions available than in Rogers, but there are significantly fewer than were present in Stokes and Norris. The number of jobs available regionally is much smaller than in Norris and Stokes. Given the Tenth Circuit's stated preference that a reviewing court should make a dispositive finding only in an "exceptional circumstance," the Court declines to find that there are a "significant number" of jobs available to plaintiff in the economy. Thus, the ALJ's alternate step five determination that plaintiff is not

disabled is in error, as there is not a finding that there is a "significant number" of other work that plaintiff is able to do.[3]

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 17) is rejected, and the Commissioner's decision denying plaintiff's application for disability benefits is **reversed** and **remanded**. A separate judgement is entered herewith.

**DATED** this 2nd day of March, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[3]  The Court does not reach plaintiff's argument that the ALJ should have ordered additional testing to confirm or reject diagnoses of fibromyalgia and inflammatory arthritis, because the case is being remanded and plaintiff can make this request to the ALJ in the first instance. In addition, it is unnecessary to consider plaintiff's challenge to the ALJ's credibility findings, because the ALJ can make new credibility findings when the case is remanded.